IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHANELL G. PARKER** | * | |
| | * | |
| v. | * | Civil Case No. GLR-17-3310 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY**[1] | * | |
| | * | |

*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions, [ECF Nos. 15, 20], and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). Plaintiff Chanell G. Parker, who proceeds *pro se,* also filed a response to the Motion for Summary Judgment submitted by the Social Security Administration ("SSA"). [ECF No. 22]. I have reviewed all of the filings, and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court deny Ms. Parker's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Initially, I note that Ms. Parker, assisted by her mother, argues that the SSA erred by declining to reopen her 2008 claim for benefits. [ECF No. 15]. Ms. Parker contends that she filed a timely written request for a hearing in 2009, which somehow was lost by the SSA. *Id.* In 2014, then, Ms. Parker filed another written request for a hearing on her 2008 claim, which the

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

SSA denied as untimely. [ECF No. 22-1]. The propriety of the SSA's actions and rulings with respect to that 2008 claim cannot be considered by this Court, because this Court lacks subject matter jurisdiction. This Court's jurisdiction is limited to reviewing decisions made by the SSA after a hearing, and no such decision was rendered in Ms. Parker's 2008 claim because a hearing was not held. *See Califano v. Sanders,* 430 U.S. 99, 107-08 (1977) ("We also agree that § 205(g) cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits."). Accordingly, review in this case is limited to the SSA's final decision on Ms. Parker's subsequent 2014 applications for benefits.

Ms. Parker filed claims for Child's Insurance Benefits and Disability Insurance Benefits in April, 2014, alleging a disability onset date of January 1, 1995.[2] (Tr. 200-06). Her claims were denied initially and on reconsideration. (Tr. 74-97, 100-21). A hearing was held on May 17, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 33-61). Following the hearing, the ALJ determined that Ms. Parker was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 12-32). On October 10, 2017, the Appeals Council ("AC") adopted the ALJ's findings, but also made additional findings regarding Ms. Parker's eligibility for Child's Insurance Benefits. (Tr. 1-9). Thus, the AC's opinion, incorporating the ALJ's decision, constitutes the final, reviewable decision of the SSA. Ms. Parker filed the instant suit seeking review of that decision on November 8, 2017. [ECF No. 1].

The ALJ found that Ms. Parker suffered from the severe impairments of "bipolar disorder and attention deficit hyperactivity disorder ('ADHD')." (Tr. 18). Despite these impairments, the ALJ determined that Ms. Parker retained the residual functional capacity ("RFC") to:

---

[2] Although Ms. Parker mentions in her filings that a later onset date would have been appropriate, her applications cited the 1995 date. (Tr. 200, 206). Regardless, the SSA considered her disability throughout the relevant window, so the onset date did not materially affect the outcome of her claims.

2

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can have no production rate or pace work, and no working with the public. She needs isolated work with occasional supervision. She can tolerate a low-stress environment with occasional decisionmaking and occasional changes in the work setting. Due to issues with fatigue, she would be off task ten percent of the workday.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Parker could perform several jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 24-25).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ largely ruled in Ms. Parker's favor at step one and determined that, despite some work activity within the relevant time frame, there was a continuous 12-month period during which she did not engage in substantial gainful activity. (Tr. 17-18); *see* 20 C.F.R. § 416.920(a)(4)(i). The ALJ specified that the remaining findings addressed the period(s) in which Ms. Parker did not engage in substantial gainful activity. (Tr. 18). At step two, the ALJ considered the severity of each of the impairments that Ms. Parker claimed prevented her from working. *See* 20 C.F.R. § 416.920(a)(4)(ii). After finding several of Ms. Parker's impairments to be severe, (Tr. 18), the ALJ continued with the sequential evaluation and considered, in

assessing Ms. Parker's RFC, the extent to which all of her mental and physical impairments limited her ability to work. (Tr. 20-24).

At step three, the ALJ determined that Ms. Parker's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 19-20). In particular, the ALJ considered the specific requirements of Listing 12.04 (affective disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04. The ALJ concluded that Ms. Parker had no restriction in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 19). The ALJ also found no episodes of decompensation of extended duration. *Id.* The ALJ supported those assessments with citations to the evidence of record. *Id.* Under the mental health listings, a claimant would need to show at least two areas of marked difficulty, or repeated episodes of decompensation, to meet the listing criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04. Accordingly, the ALJ did not err by concluding that the listings were not met.

In considering Ms. Parker's RFC, the ALJ summarized her subjective complaints from her filings and hearing testimony. (Tr. 21). The ALJ then engaged in a detailed review of Ms. Parker's limited medical records. *Id.* The ALJ noted that Ms. Parker had stated at one point that she could not afford ongoing therapy, but then stated at another point that she has health insurance through her job. *Id.* The ALJ also noted that Ms. Parker's symptoms had improved during a brief period in which she obtained treatment. (Tr. 22). More importantly, though, the ALJ focused on Ms. Parker's "somewhat normal level of daily activity and interaction," including "working at multiple part time and full time jobs," sometimes at substantial gainful activity levels. *Id.* The ALJ also assessed and made assignments of weight to the medical opinions in the record. (Tr. 22-23). In particular, the ALJ assigned "great weight" to the opinion

from Ms. Parker's treating psychiatrist in May, 2009, who found only "mild difficulties" with most of the vocationally relevant criteria. (Tr. 22). The ALJ considered each of the GAF scores assessed by medical sources. (Tr. 22-23). The ALJ also considered assessments made in 2009 and 2014 by a consultative examiner, but noted that the reports did not contain "medical opinions expressed in function-by-function terms." (Tr. 23). The ALJ weighed, for longitudinal purposes given the longstanding nature of Ms. Parker's condition, opinions from treating and examining sources during Ms. Parker's childhood and adolescence, but afforded them "little weight" as not "vocationally relevant." *Id.* The ALJ expressly considered all of the information provided by Ms. Parker's mother, but ultimately deemed her reports to be "simply not consistent with the preponderance of the opinions and observations by medical professionals in this case." *Id.* Finally, the ALJ assigned "partial weight" to the opinions from the non-examining State agency consultants, and specified which portions of the opinions were afforded more or less weight. (Tr. 23-24).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Parker's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, the ALJ determined that Ms. Parker could not perform any past relevant work. (Tr. 24). Accordingly, the ALJ proceeded to step five and considered the impact of Ms. Parker's age, level of education, and RFC on her ability to adjust to new work. (Tr. 24-25). In doing so, the

ALJ cited the VE's testimony that a person with Ms. Parker's RFC would be capable of performing the jobs of "conveyer feeder" or "router." (Tr. 25). Based on the VE's testimony, then, the ALJ concluded that Ms. Parker was capable of successfully adjusting to other jobs that exist in significant numbers in the national economy. *Id*. The ALJ's reliance on the VE's testimony constitutes substantial evidence supporting the ultimate conclusion that Ms. Parker was not disabled.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court DENY Plaintiff's Motion for Summary Judgment, [ECF No. 15], GRANT Defendant's Motion for Summary Judgment, [ECF No. 20]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: August 7, 2018
                                                /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge